IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CESAR POLANCO FIGUEROA,** | * | |
| **# 776146FH4,** | * | |
| | * | |
|     **Petitioner,** | * | |
| | * | |
| vs. | * | **CRIMINAL NO. 15-00204-CG-B** |
| | * | **CIVIL ACTION NO. 17-00184-CG-B** |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
|     **Respondent.** | * | |

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Cesar Polanco Figueroa's "Motion to Correct His Sentence Under 18 USC 2255" (Doc. 160), and the Government's motion to dismiss (Doc. 162). This action was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary to resolve this matter.[2] Upon consideration, the undersigned

---

[1] The Honorable Senior United States District Judge Callie V.S. Granade presided over the proceedings in this action. The undersigned has reviewed Figueroa's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Granade.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims which are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

recommends that Figueroa's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Cesar Polanco Figueroa. The undersigned further recommends that in the event Figueroa files a certificate of appealability and seeks to appeal *in forma pauperis,* said requests should be **DENIED**.

I. <u>**PROCEDURAL BACKGROUND**</u>

Figueroa, a citizen of Mexico, was indicted on August 27, 2015 and charged with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count one); possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (counts two, four, five, and six); and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (count three). (Docs. 1, 98).

On December 10, 2015, Figueroa's counsel advised the Court of Figueroa's desire to enter into a counseled plea agreement. (Doc. 58). In the plea agreement, Figueroa agreed to plead guilty to count one (conspiracy to distribute methamphetamine) of the indictment. (Doc. 65 at 1). As part of the plea agreement, Figueroa waived his "right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255." (<u>Id.</u> at 11). However, Figueroa reserved his right to challenge, in a direct appeal, any

2

sentence imposed in excess of the statutory maximum and any sentence which constituted an upward departure or variance from the advisory guideline range. (Id. at 12). Figueroa also reserved the right to claim ineffective assistance of counsel in either a direct appeal or in a § 2255 motion. (Id.). In return, the Government agreed, *inter alia*, that it would not bring any additional charges against Figueroa related to the facts underlying the indictment, that it would move to dismiss the remaining counts against Figueroa, and that it would recommend to the Court that Figueroa be sentenced at the low end of the advisory guideline range. (Id. at 6).

On December 16, 2015, Figueroa entered a plea of guilty to count one of the indictment. (Doc. 66). The Court accepted Figueroa's guilty plea. (Id.). Figueroa's sentencing hearing was held on March 23, 2016. (Doc. 101). Figueroa was sentenced to 135 months' imprisonment, a supervised release term of four years, and, immediately after incarceration, delivery to a duly-authorized Immigration official for deportation consideration. (Doc. 103). On April 7, 2016, the Court entered a judgment consistent with the pronounced sentence. (Id.). Figueroa did not directly appeal his conviction or sentence.

On March 20, 2017,[3] Figueroa filed the instant "Motion to

---

[3] Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to

Correct His Sentence Under 18 USC 2255". (Doc. 160). The Government filed a motion to dismiss Figueroa's § 2255 motion on May 5, 2017, in which it made the sole argument that Figueroa's sentencing-related claims are not cognizable under § 2255 because they do not constitute constitutional error or rise to the level of a miscarriage of justice. (Doc. 162). Figueroa filed a timely reply to the Government's motion. (Doc. 163). Accordingly, this matter is now ripe for review.

## II. **HABEAS STANDARD**

The limited scope of habeas relief is well-established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

---

prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). (See Doc. 160 at 11).

4

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008) (quotation marks in original).

### III.  DISCUSSION

Figueroa argues that he should receive a twelve-month downward departure in his sentence based on his status as a deportable alien.  (Doc. 160 at 2).  Specifically, Figueroa contends that his status prevents him from serving his sentence in a minimum-security facility and spending the final portion of his sentence in home confinement or a transitional facility, as provided for in 18 U.S.C. § 3624(c), thereby causing a "fortuitous increase in the severity of his sentence" and denying him "proper re-entry back into the community."  (Doc. 160 at 1).  Figueroa also asserts that his deportable alien status will cause him to continue to be held in custody after serving his present sentence while his deportation proceeding is completed, in violation of 8 U.S.C. § 1228(a), and that he should therefore be granted an additional downward departure of two to six months.  (Id. at 6-7).  Figueroa admits that he does not know whether Judge Granade considered granting a downward departure because of his alienage at sentencing, and he acknowledges that if such a departure was considered and declined, he "get[s] nothing."  (Id. at 10).  However, according to Figueroa, if Judge Granade "overlooked that

5

departure in [her] consideration of a just sentence[,]" the Court should now correct his sentence to include a downward departure based on his deportable alien status. (Id. at 11). Figueroa also appears to raise a claim that his ineligibility for minimum security confinement, placement in a community correctional facility, or home confinement based on his status as a deportable alien amounts to an equal protection violation. (Id. at 4-6). In addition, Figueroa states: "I believe I did not get the 3 point downward departure for acceptance of responsibility and I ask that it be given to me now if in fact I did not receive it." (Id. at 10).

### A. Figueroa's status as a deportable alien does not warrant a downward departure in his sentence.

Figueroa first argues that, because he is allegedly ineligible for minimum security confinement and ineligible for home confinement or transfer to a community correctional facility under 18 U.S.C. § 3624(c) due to his status as a deportable alien, and because he is likely to be detained an additional two to six months pending deportation after the completion of his term of imprisonment, he should be granted a downward departure in his sentence of imprisonment under the reasoning of United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994), and similar cases.

"Under 18 U.S.C. § 3553(b), a district court may depart from the applicable [sentencing] guideline range if 'the court finds

6

that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997). In Smith, the D.C. Circuit Court of Appeals held that "a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence," but cautioned that such a departure "on account of the deportable alien's severity of confinement may be quite rare." 27 F.3d at 655.

However, the Eleventh Circuit Court of Appeals, whose published decisions, unlike those of the D.C. Circuit, are binding on this Court, has determined that a defendant's alien status does not warrant a downward reduction from the sentencing guidelines, see United States v. Canpaz, 276 F. App'x 878, 881 (11th Cir. 2007), and has previously rejected arguments similar to Figueroa's. In United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996), overruled on other grounds by United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (en banc), the Eleventh Circuit held that an alien's ineligibility to serve her sentence at a minimum-security facility and ineligibility for a halfway house near the end of her sentence did not justify a downward departure. 83 F.3d at 382. The Court noted that collateral

7

consequences of a defendant's alienage might serve as a basis for a downward departure if those consequences were extraordinary in nature or degree, but that downward departures were not warranted based on: (1) the unavailability of preferred conditions of confinement, or (2) the possibility of an additional period of detention pending deportation following the completion of the sentence. Id.

In a subsequent decision, the Eleventh Circuit criticized the statement in Veloza, which it characterized as dicta, suggesting that extraordinary collateral circumstances of alienage might be grounds for a downward departure, and it reversed a district court's grant of a downward departure to shield a defendant from consequences pertaining to his immigration. See United States v. Maung, 320 F.3d 1305, 1308-10 (11th Cir. 2003); see also United States v. Lahoud, 178 F. App'x 926, 927 (11th Cir. 2006). In Maung, the Court stated that it was unaware of any decision that "has upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien." 320 F.3d at 1308. See also Reascos-Renia v. United States, 2017 U.S. App. LEXIS 26590, at *3-4, 2017 WL 6513752, at *2 (11th Cir. Oct. 4, 2017), cert. denied, 138 S. Ct. 528 (2017); United States v. Phothisat, 2019 U.S. Dist. LEXIS 16976, at *3-4, 2019 WL 419322, at *2 (S.D. Ala. Jan. 8, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 16846,

8

2019 WL 418112 (S.D. Ala. Feb. 1, 2019).

In view of the foregoing authority, the alleged collateral consequences of Figueroa's alien status, including his ineligibility to be housed at a minimum-security facility, his ineligibility for home confinement or transfer to a community correctional facility, and his possible additional period of detention pending deportation following the completion of his sentence, are not sufficient grounds for downward departure. Accordingly, Figueroa's request for a downward departure under the D.C. Circuit's reasoning in Smith is due to be denied.[4]

**B. Figueroa fails to state a viable equal protection claim.**

Figueroa appears to suggest that his ineligibility for minimum security confinement, home confinement, or placement in a community correctional facility amounts to a violation of equal protection based on his status as an alien. This claim is meritless. To establish a claim cognizable under the Equal Protection Clause, a prisoner must demonstrate (1) that he was similarly situated with other prisoners who received more

---

[4] Figueroa's claims also appear to be procedurally defaulted and precluded by the collateral-action waiver contained in his plea agreement. Because the Government has not raised these defenses, and Figueroa's claims are clearly without merit, the undersigned will forego any discussion of these issues.

9

favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race, religion, national origin, poverty, or some other constitutionally protected interest. Damiano v. Fla. Parole and Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam); Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (per curiam). Additionally, to succeed on an equal protection challenge, a petitioner must demonstrate the existence of discriminatory intent; arbitrary action without discriminatory intent is insufficient to demonstrate an equal protection violation. Jones v. White, 992 F.2d 1548, 1573 (11th Cir. 1993).

"It is not an equal protection violation to allow United States citizen-inmates, who must re-enter domestic society, to participate in rehabilitative or other programs, while denying that privilege to deportable inmates." Afflick v. United States, 2013 WL 63410544, at *5 (S.D. Fla. Dec. 9, 2013). See also McLean v. Crabtree, 173 F.3d 1176, 1186 (9th Cir. 1999) (holding that the denial of benefits such as drug programs and pre-release custody to deportable aliens pursuant to immigration detainers does not violate the Constitution, as such exclusions are "rationally related to the [Bureau of Prisons'] legitimate interest in preventing prisoners from fleeing detainers while participating in community treatment programs"); United States v. Gonzales-Guzman, 2007 U.S. Dist. LEXIS 77914, at *4, 2007 WL 3026651, at *2 (E.D.

Wash. Oct. 16, 2007) ("Petitioner's disparate treatment claim is unsuccessful because the Bureau of Prisons has a legitimate interest in preventing deportable alien prisoners from fleeing while in half-way houses and Petitioner fails to cite either law or facts demonstrating his conditions are substantially more onerous than the framers of the guidelines contemplated.") (internal quotation marks and citation omitted).

Moreover, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."[5]  Demore v.

---

5   As one district court cogently explained:

> The [Bureau of Prisons] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning.  There is no merit to movant's motion.  The different classification for alien inmates is reasonable and proper. . . .  There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs.  The United States may treat deportable aliens and citizens differently.  There is no primary interest in reformation of deportable persons.  That's an interest of the country to which they may be deported. Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border.  In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.

11

Kim, 538 U.S. 510, 522 (2003). Figueroa has failed to present any facts which suggest that he has a viable equal protection claim. Accordingly, Figueroa's equal protection claim, to the extent he raises one, fails.

    **C. Figueroa's claim that he did not receive a three-level reduction in his guideline offense level for acceptance of responsibility is affirmatively contradicted by the record.**

As his final argument, Figueroa, although he admits he may be mistaken, states that he believes he "did not get the 3 point downward departure for acceptance of responsibility and I ask that it be given to me now if in fact I did not receive it." (Doc. 160 at 10). However, as set forth below, the record clearly reflects that Figueroa received a three-level reduction in his guideline offense level for acceptance of responsibility.

A review of Figueroa's presentence investigation report shows that his base offense level was 34. (Doc. 69 at 8). After Figueroa received a two-level increase under U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager, or supervisor in a criminal activity, his adjusted offense level was 36. (Id. at 8-9). Because Figueroa demonstrated acceptance of responsibility for the offense, his offense level was decreased by two levels pursuant to

---

Ruiz-Loera v. United States, 2000 U.S. Dist. LEXIS 22795, at *4-5, 2000 WL 33710839, at *2 (D. Utah June 23, 2000), report and recommendation adopted, 2000 U.S. Dist. LEXIS 22797 (D. Utah July 13, 2000).

12

U.S.S.G. § 3E1.1(a). (Id. at 9). Figueroa also received a one-level decrease under § 3E1.1(b) because his adjusted offense level was greater than 16 and he assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea. (Id.). Accordingly, his total offense level was 33. (Id.). Based upon Figueroa's total offense level of 33 and criminal history category of I, his guideline imprisonment range was 135 to 168 months. (Id. at 12). The Court sentenced Figueroa to 135 months' imprisonment, which was at the low end of the guideline range, and consistent with the plea agreement. (Doc. 103 at 2; Doc. 104 at 2).

Accordingly, the record affirmatively demonstrates that Figueroa did receive the benefit of a three-level acceptance of responsibility reduction in his total offense level pursuant to U.S.S.G. § 3E1.1. Thus, no further relief on this claim is warranted.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an

applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds, without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of the underlying constitutional claims, as in this case, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.; see also id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot[ v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

14

manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Figueroa's petition does not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Figueroa's claims should be resolved in a different manner or that Figueroa deserves to proceed further. The recommendation that Figueroa's claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claim on the record presented. As a result, Figueroa is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Cesar Polanco Figueroa's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 160) be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Cesar Polanco Figueroa. The undersigned Magistrate Judge further opines that Petitioner is not entitled to the issuance of a certificate of appealability or the option to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **6th** day of **May, 2019.**

                                               **/s/ SONJA F. BIVINS**
                                     **UNITED STATES MAGISTRATE JUDGE**